GABRIELLA MURRAY HIEB AND ROBERT NELSON HIEB, PLAINTIFFS-APPELLEES V. WOODROW LOWERY, DEFENDANT-APPELLANT

No. COA94-1243

(Filed 5 December 1995)

**Workers' Compensation § 85 (NCI4th)— workers' compensation benefit—lien against all UIM coverage—judgment modified by another superior court judge—error**

Where one superior court judge held that defendant workers' compensation carrier could assert a lien pursuant to N.C.G.S. § 97-10.2 against *all* of the proceeds from the UIM carrier's coverage, the trial court was without authority to exercise its discretion under N.C.G.S. § 97-10.2 to determine the amount of the workers' compensation carrier's lien and to order the balance of the UIM proceeds to be paid to plaintiffs, since plaintiffs' judgment against the tortfeasor exceeded the amount necessary to reimburse the workers' compensation carrier, and the trial court could not speculate on what might happen in the future even

though the workers' compensation carrier was required to pay plaintiff workers' compensation benefits for the remainder of her life and at some point its lien might become greater than the amount of plaintiffs' judgment, and the trial court could not modify, overrule, or change the judgment of another superior court judge previously made in the same case.

**Am Jur 2d, Workers' Compensation §§ 110, 451.**

**Unsatisfied claim and judgment statutes: validity and construction of provisions for deduction from award of sums collectible by claimant from other sources. 7 ALR3d 836.**

Judge WYNN dissenting.

Appeal by defendant St. Paul Insurance Company from Order entered 14 July 1994 by Judge Claude S. Sitton in Mecklenburg County Superior Court. Heard in the Court of Appeals 19 October 1995.

*Charles G. Monnett III & Associates, by Charles G. Monnett III, for plaintiffs-appellees.*

*Dean & Gibson, by Rodney Dean and J. Bruce McDonald, for defendants-appellants.*

JOHNSON, Judge.

Plaintiff Gabriella Hieb was involved in an automobile accident during and in the course of employment for her employer, Howell's Child Care Center. As a result of this accident, plaintiff suffered various injuries, including a frontal lobe concussion, a compression fracture at L-1, a rotator cuff tear, fractured ribs, a bruised kidney, AC joint separation, cervical strain, ankle sprain and strain, bulging discs, post-concussion syndrome, and a closed head injury. Plaintiff is now permanently and totally disabled. Plaintiffs, Gabriella Hieb and her husband, Robert Hieb, subsequently filed suit against defendant Woodrow Lowery, the driver of the vehicle that hit Mrs. Hieb in the 17 October 1989 accident. The matter came on for hearing during the 12 October 1992 civil session of Mecklenburg County Superior Court, Judge Robert E. Gaines presiding. The matter was tried to a jury verdict, awarding Mrs. Hieb the sum of One Million Two Hundred Seventy-nine Thousand Dollars ($1,279,000.00), and Mr. Hieb the sum of Forty Thousand Dollars ($40,000.00). In his 2 November 1992

Judgment, Judge Gaines made the following pertinent Findings of Fact:

> 6. St. Paul Fire and Marine contends that it is entitled to a worker's [sic] compensation lien pursuant to North Carolina General Statute[s] [s]ection 97-10.2 against any amounts payable to Plaintiff Gabriella Murray Hieb under the Hartford policy. The Plaintiffs disagree.
>
> 7. The Plaintiffs have instituted a second action against St. Paul Fire and Marine and Hartford Insurance Company (Mecklenburg County file number 91-CVS-3263) to determine the respective rights of the parties to the benefits of the Hartford underinsured motorist coverage and to determine the amount of such coverage.
>
> 8. That on or about August 28, 1992, an order was entered in that action by the Honorable Robert P. Johnston which holds that the Hartford is allowed to reduce its limits by the amount of worker's [sic] compensation paid or to be paid to Plaintiff and further holding that the proceeds of the Hartford underinsured policy are subject to the lien of St. Paul Insurance Company pursuant to North Carolina General Statute[s] [s]ection 97-10.2. That action is now on appeal to the North Carolina Court of Appeals. This Court is bound by the Order of Judge Johnston unless and until said Order is modified by the Court of Appeals or any other Court of competent jurisdiction. This Court has not addressed the issues raised in that action.

Based on these Findings of Fact, Judge Gaines concluded that "in accordance with the Order of the Honorable Robert P. Johnston, in case number 91-CVS-3263, St. Paul Fire and Marine Insurance Company is entitled to a lien against the proceeds of the Hartford underinsured motorist policy for *all amounts paid, or to be paid*, to Plaintiff Gabriella Murray Hieb as worker's[sic] compensation benefits pursuant to the provisions of North Carolina General Statutes [s]ection 97-10.2." (emphasis added). Plaintiffs gave Notice of Appeal from this Judgment, but later withdrew the notice.

Shortly after the first action was filed, plaintiffs instituted a second action against defendant St. Paul and Hartford Insurance Company (Hartford) in Mecklenburg County Superior Court, *Hieb v. St. Paul Fire & Marine Ins. Co.* to determine the respective rights of the parties to benefits provided by a Hartford UIM policy and to determine the amount of coverage available. An Order, entered in that

action by Judge Robert P. Johnston, provided that Hartford was allowed to reduce its UIM limits by the amount of workers' compensation paid or to be paid in the future to Mrs. Hieb; and that the proceeds of the Hartford UIM policy were subject to the lien of defendant St. Paul pursuant to North Carolina General Statutes section 97-10.2.

Plaintiffs appealed Judge Johnston's decision to our Court. On 2 November 1993, we issued an opinion, *Hieb v. St. Paul Fire & Marine Ins. Co.*, 112 N.C. App. 502, 435 S.E.2d 826 (1993), which reversed that portion of Judge Johnston's Order allowing Hartford to reduce its limits and affirmed that portion of the Order which allowed defendant St. Paul to assert a workers' compensation lien against the UIM benefits. No further appellate review of this decision has been sought.

On or about 20 December 1993, Hartford tendered its policy limit ($475,000.00) to the Office of the Clerk of Superior Court pursuant to the Orders of Judges Johnston and Gaines. As of 18 December 1993, defendant St. Paul had paid $259,042.77 in workers' compensation benefits to Mrs. Hieb. Plaintiffs and defendant St. Paul were unable to agree as to how the Hartford UIM proceeds were to be disbursed. Defendant St. Paul contended that no portion of the Hartford money could be disbursed to either plaintiff until its workers' compensation lien was set and satisfied in full. Unable to reach an agreement with defendant St. Paul as to the disbursement of the Hartford funds, plaintiffs filed a Motion to Modify Judgment, Enforce Judgment and Set Workers' Compensation Lien. Judge Claude S. Sitton allowed this Motion by Order entered 14 July 1994, which concludes in pertinent part:

4. That the Court should exercise its discretion under the provisions of North Carolina General Statute[s] [s]ection 97-10.2 to determine the amount of St. Paul's compensation lien.

5. That the sum of $241,677.77 is fair and equitable for St. Paul to receive in satisfaction of its workers' compensation lien.

6. That it is fair and equitable for the balance of the Hartford UIM proceeds be paid to the Plaintiffs.

It was, therefore, ordered:

1. That St. Paul shall be entitled to recover the sum of $241,677.77 as full satisfaction of any workers [sic] compensation lien it may

have on account of any worker's [sic]compensation benefits paid or to be paid, to Plaintiff Gabriella Murray Hieb as a result of the automobile accident which is the subject of this action;

2. That the Plaintiffs['] attorney, Charles G. Monnett III, shall be entitled to an attorney's fee of $80,551.20 from the above sum as provided by the terms of the Judgment entered in this action on November 2, 1992.

3. That the Plaintiffs' attorney, Charles G. Monnett III[,] shall pay to St. Paul Fire and Marine, for the proceeds of the Hartford UIM policy, the sum of $161,126.57 within 5 days from the entry of this Order;

4. That the sums remaining from the Hartford UIM proceeds after the payment of the above amounts shall be paid to the Plaintiffs.

Consequently, on 28 July 1994, plaintiffs' counsel issued a check on his trust account to defendant St. Paul in the amount of $161,126.57 pursuant to Judge Sitton's Order. Defendant St. Paul appeals.

Defendant argues that Judge Sitton did not have authority to enter the 14 July 1994 Order. We must agree.

Generally, one superior court judge may not modify, overrule, or change the judgment of another superior court judge previously made in the same case, on the same issue. *Calloway v. Motor Co.*, 281 N.C. 496, 189 S.E.2d 484 (1972); *Carr v. Carbon Corp.*, 49 N.C. App. 631, 272 S.E.2d 374 (1980), *disc. review denied*, 302 N.C. 217, 276 S.E.2d 914 (1981). There are, however, some statutory exceptions to this rule. *See, e.g.*, North Carolina General Statutes §§ 97-10.2 (1991) and 1A-1, Rule 60 (1990).

Section 97-10.2(j) provides in pertinent part:

(j) Notwithstanding any subsection in this section, in the event that a judgment is obtained which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier . . . either party may apply to the resident superior court judge of the county in which the action arose or the presiding judge before whom the cause of action is pending, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties and with or without the consent of the employer, the judge shall determine, in his discretion, the amount, if any, of the employer's lien. . . .

**HIEB v. LOWERY**

[121 N.C. App. 33 (1995)]

The facts in the instant case tend to show that Mrs. Hieb obtained a judgment from defendant Lowery in the amount of $1,279,000.00. Of this judgment, Mrs. Hieb stands to collect from insurance proceeds, only $500,000.00, which represents the $25,000.00 policy limit already tendered by defendant Lowery's insurance company, Integon Indemnity Company (Integon) and the Hartford UIM policy limit of $475,000.00 (the original policy limit of $500,000.00 minus a $25,000.00 reduction for the $25,000.00 paid by Integon), which is the subject of this dispute. Unfortunately, Mrs. Hieb may never collect the remainder of the monies awarded to her in the 14 July 1994 Judgment. In his Order, Judge Johnston held that defendant St. Paul could assert a lien pursuant to § 97-10.2 against *all* of the proceeds from Hartford's UIM coverage. Our Court affirmed this portion of Judge Johnston's Order. As of April 1994, defendant St. Paul had paid Mrs. Hieb approximately $266,400.00 in workers' compensation benefits. This situation, however, does not call section 97-10.2(j) into play, as the "judgment" (in excess of $1.25 million) exceeded any amount necessary to reimburse the workers' compensation insurance carrier. Arguably, as defendant St. Paul is required to pay Mrs. Hieb workers' compensation benefits for the remainder of her life, at some point its lien may become greater than the amount of Mrs. Hieb's judgment, at which time, section 97-10.2(j) *may* become applicable. However, at the time that Judge Sitton entered his Order, such was not the case.

It is not for Judge Sitton, nor this Court, to speculate upon what may occur in the future. Giving the statute its plain meaning, requires us to read the term "judgment" to mean just that, and to reject plaintiffs' argument that we should look only at the insurance "proceeds" that Mrs. Hieb is to receive in determining the applicability of section 97-10.2(j). In light of the foregoing, we are unable to say that Judge Sitton's actions were proper under section 97-10.2(j).

Had the judge acted pursuant to Rule 60(b) *sua sponte* or upon motion, we would have a far different result herein. *See Carter v. Clowers,* 102 N.C. App. 247, 401 S.E.2d 662 (1991). In fact, this Court has previously held that a superior court judge has authority to grant relief under a section (b) motion without offending the rule that precludes one superior court judge from reviewing the decision of another. *Hoglen v. James,* 38 N.C. App. 728, 248 S.E.2d 901 (1978). Alas, however, plaintiff made no Rule 60(b) motion, nor did Judge Sitton purport to act pursuant to Rule 60(b) in his 14 July 1994 Order. The facts, in the case *sub judice,* though quite heartrending, present

us with little choice. We must reverse Judge Sitton's decision in this regard.

Defendant also argues that Judge Sitton's Order raises additional issues which must be addressed by our Court. Defendant contends that this Court should review the award of attorneys' fees to plaintiffs' counsel. Defendant argues that the attorneys' fees awarded to plaintiffs' attorney exceeds the one-third statutory maximum permitted in section 97-10.2(f)(1)b and that plaintiffs' attorney has violated Rule 5.1 of the North Carolina Rules of Professional Conduct.

Rule 10(b)(1) of the North Carolina Rules of Appellate Procedure requires that a party present the trial court with a timely request, objection, or motion, in order to preserve a question for appellate review. If the party fails to appropriately preserve his question for appellate review, he is said to have waived his right to appellate review of that question. N.C. R. App. P. 10.

Notably, defendant raises these meritless contentions for the first time on appeal. As defendant has failed to adequately preserve these issues for appellate review, we need not address them at this juncture.

The decision of Judge Sitton must, nonetheless, be reversed as he was without authority under section 97-10.2 to modify another superior court judge's order.

Reversed.

Judge EAGLES concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

The dispute giving rise to this matter arises from a jury award obtained by Mrs. Hieb in an amount in excess of $1.5 million. However, the source of funds available to satisfy that judgment are the proceeds of the Hartford UIM policy in the amount of $475,000.00.

In the first appeal involving this case, this Court interpreted N.C. Gen. Stat. § 97-10.2 (1991) to allow the workers' compensation insurer, St. Paul Insurance Company, a "lien against all amounts paid or to be paid to Mrs. Hieb by Hartford pursuant to its UIM coverage."

*Hieb v. St. Paul Fire & Marine Ins. Co.*, 112 N.C. App. 502, 507, 435 S.E.2d 826, 828 (1993).

Thus, while this Court affirmed that St. Paul was entitled to a lien, it did not determine the *amount* of the lien, nor did it consider the equitable implications of N.C.G.S. § 97-10.2(j) which provides in pertinent part:

> [I]n the event that a judgment is obtained which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier, . . . either party may apply to the resident superior court judge of the county in which the cause of action arose, where the injured employee resides or the presiding judge before whom the cause of action is pending, to determine the subrogation amount. After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, and with or without the consent of the employer, *the judge shall determine, in his discretion, the amount, if any, of the employer's lien and the amount of cost of the third-party litigation to be shared between the employee and employer . . . .*

(emphasis supplied).

Following our decision in *Hieb I*, it became painfully obvious to Mrs. Hieb that since this Court had determined that St. Paul was entitled to a lien on all amounts paid or to be paid by Hartford, it only would be a matter of time before the continuing workers' compensation payments by St. Paul would erase all of the benefits that she had gained by litigating her personal injury action.

Since the prior judgment did not address the issue of the amount of the judgment, she proceeded under N.C.G.S. § 97-10.2(j) to obtain an equitable remedy. In ruling on this matter, Judge Sitton recognized that the lien, if allowed to continue to attach on continuing payments of workers' compensation, would exceed the judgment. To assume otherwise is speculation. That is why N.C.G.S. § 97-10.2(j) states that the trial court shall, in its discretion, determine the *amount* of the workers' compensation lien where the full proceeds from any judgment or settlement are insufficient to satisfy the lien.

The trial court, as a matter of law, had full authority to exercise its discretion and set the *amount* of the workers' compensation lien to be repaid and to permit the remaining funds to be disbursed to Mr.

and Mrs. Hieb. Indeed, it would be an unjust result to hold that a court has no authority to determine the subrogation amount under N.C.G.S. § 97-10.2(j) once it determines that a party is entitled to an undetermined and continuing lien amount on present proceeds.

I, therefore, respectfully dissent.